**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

AMANDA DALE WOODARD,

Plaintiff,

v. Case No. 2:25-cv-717-KRH

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
______________________________/

**ORDER**[1]

Plaintiff Amanda Dale Woodard seeks judicial review of a denial of Social Security disability benefits. The Commissioner filed the transcript ("Tr.") of the proceedings (Doc. 13), Plaintiff filed an opening brief (Doc. 17), and the Commissioner responded (Doc. 22). As discussed below, the decision of the Commissioner is affirmed.

## 1. Eligibility for Disability Benefits and Defendant's Decision

### A. Eligibility

The Social Security Act and its related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or "can be expected to last for a continuous period of not

[1] Unless otherwise indicated, all citations are cleaned up without notation to remove non-substantial quotes, citations, or alterations to improve readability.

less than [twelve] 12 months."[2] Depending on its nature and severity, an impairment[3] limits exertional abilities like lifting or walking, nonexertional abilities like hearing or seeing,[4] tolerances for workplace conditions[5] like temperature extremes or fumes, or aptitudes necessary to do most jobs such as dealing with people or using judgment. And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy, or a medical impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments", the person is disabled for purposes of the Social Security Act.[6]

### B. Factual and procedural history

On October 2, 2017, Amanda Dale Woodard applied for a period of disability and disability insurance benefits, asserting an alleged onset date of September 22, 2015. (Tr. 281-87). On December 13, 2017, at the initial determination level,[7] a

---

[2] 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a).

[3] *See generally* 20 C.F.R. § 404.1511 (defining a disabling impairment); *id.* § 404.1522 (discussing nonsevere impairments); *id.* § 404.1545 (discussing residual functional capacity which is the most an individual can individually do despite their limitations).

[4] *See generally id.* § 404.1569a (discussing exertional and nonexertional limitations).

[5] *See generally id.* § 404.1513(a)(2)(i) (discussing the various work-related individual limitations); *id.* § 404.1594(b)(4) (discussing functional capacity to do basic work activities).

[6] *See id.* § 404.1505 (defining disability); *see also id.* § 404.1511 (clarifying the disability status of insured workers).

[7] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See generally* 42 U.S.C. § 421(a) (authorizing states to carry out their own disability determinations for its own residents); *Disability Determinations*, FLORIDAHEALTH, https://www.floridahealth.gov/individual-family-health/disability-rehabilitation/disability-determinations/ (last visited Sep. 7, 2026) ("The Division of Disability Determinations is responsible for making the determination of medical eligibility for Florida

disability examiner determined that Plaintiff was disabled beginning January 18, 2017. (Tr. 83-98, 154, 157). On November 9, 2021, a Continuing Disability Review ("CDR")[8] was performed at the initial level where the Commissioner determined that Plaintiff medically improved and was no longer disabled as of November 9, 2021, and that Plaintiff could perform other jobs in the national economy. (Tr. 99-108, 159, 161). On October 12, 2022, at the CDR hearing level, that finding was affirmed. (Tr. 120-126, 179-94). After, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 195).

On June 22, 2023, the ALJ, Ryan Johannes, held an administrative hearing. (Tr. 64-82). Then, on July 26, 2023, the ALJ issued an unfavorable decision finding that Plaintiff was no longer disabled as of November 9, 2021. (Tr. 127-47). On January 26, 2024, the Appeals Council vacated the ALJ's July 26, 2023, decision and remanded the case to the ALJ for further evaluation in considering medical source opinions and prior administrative medical findings. (Tr. 148-52).

Then, on July 25, 2024, the ALJ held a new administrative hearing. (Tr. 48-63). On August 2, 2024, the ALJ issued a new decision, finding that Plaintiff's disability ended on November 9, 2021. (Tr. 15-30). Next, on August 22, 2024, Plaintiff requested a review of the ALJ's decision by the Appeals Council. (Tr. 8-12,

---

citizens who apply for disability benefits under the U.S. Social Security Administration disability programs (Social Security Disability-Title II and Supplemental Security Income-Title XVI), and under Florida's" Medically Needy Program.).

[8] A *Continuing Disability Review* is a review by Social Security in which the Administration periodically reviews a claimant's medical impairment(s) to determine whether the claimant is to remain determined to have a disabling condition. *Continuing Disability Reviews*, SOC. SEC., https://www.ssa.gov/ssi/text-cdrs-ussi.htm (last visited Sep. 15, 2026).

278-79). Ultimately, on June 25, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. (Tr. 1-6). Woodard then timely brought the matter to this Court after administrative remedy exhaustion, and now the case is ripe for judicial review. (Doc. 1).

### C. The ALJ's decision

Generally, the ALJ must perform a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). Yet when the issue is cessation of disability benefits because of medical improvement,[9] an ALJ is required to complete an eight-step sequential evaluation to determine whether a claimant has medically improved. *Townsend v. SSA*, No. 6:13-cv-1783-Orl-DAB, 2015 U.S. Dist. LEXIS 21887, at *6 (M.D. Fla. Feb. 24, 2015) (citing 20 C.F.R. § 404.1594(f) ("The Social Security regulations provide an eight-step sequential evaluation process for determining if a claimant's disability continues.")). To elaborate:

> Under [t]he eight-step sequential evaluation requires the ALJ to consider the following inquiries: (1) Is the individual performing substantial gainful activity; (2) Does she have a severe impairment or combination of impairments that meets or equals the severity of an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) If [the claimant] does not, has there been medical improvement; (4) If there has been medical improvement, is it related to [the claimant's] ability to do work; (5) Does an exception to medical improvement apply; (6) Do all current impairments in combination significantly limit the claimant's ability to do basic work activities; (7) After assessing the residual functional capacity ("RFC"), can [the claimant] perform [the claimant's] past relevant work; and (8) Based

[9] "Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1)

> on [the claimant's] RFC, age, education, and work experience, does other work exist in the national economy that [the claimant can] perform.

*Lynch v. SSA*, 358 F. App'x 83, 84 n.1 (11th Cir. 2009); *see also* 20 C.F.R. § 404.1594(f) (outlining the eight-step sequential evaluation process); (Tr. 19-20) (discussing the eight-step sequential process). "An ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments related to [the claimant's] ability to work, and the claimant is now able to engage in substantial gainful activity." *Klaes v. SSA*, 499 F. App'x 895, 896 (11th Cir. 2012) (citing 42 U.S.C. § 423(f)(1) and 20 C.F.R § 404.1594(a)). Notably,

> In a cessation disability determination, although the claimant generally continues to have the burden of proving disability at the final step, "a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at [the final] step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience."

*Lynch*, 358 F. App'x at 86 (citations omitted); *see also* 20 C.F.R. § 404.1594(f)(8) (providing that if the Commissioner determines that a claimant can do other work, the claimant is no longer disabled). Put simply, "When considering a case for termination or cessation of benefits, . . . the [ultimate] burden is on *the Commissioner* to prove that the claimant is no longer disabled as of the cessation date because the Plaintiff had experienced 'medical improvement.'" *Townsend*, 2015 U.S. Dist. LEXIS 21887, at *9 (quoting *Simpson v. Schweiker*, 691 F.2d 966,

969 (11th Cir. 1982), *superseded on other grounds by* 42 U.S.C. § 423(d)(5)(A), *as stated in*, *Elam v. R.R Retirement Bd.*, 921 F.2d 1210 (11th Cir. 1991)).

Moreover, the governing regulations provide that the Commissioner conducts the "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security hearings "are inquisitorial rather than adversarial." *Washington v. SSA*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, 'It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* (citations omitted). "Relatedly, at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (citation omitted). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (citation omitted).

Here, the ALJ found that the most recent favorable medical decision finding that Plaintiff was disabled is dated December 14, 2017. (Tr. 20). The ALJ noted that the "most recent favorable medical decision is known as the 'comparison point decision' or CPD."[10] (Tr. 20). "At the time of the CPD, the [ALJ found that Plaintiff]

[10] "The CPD is the most recent favorable medical decision, that is, the latest final decision involving consideration of the medical evidence [which is used when determining] the issue of whether the claimant was disabled or continued to be disabled." *Rivera v. SSA*, No. 6:17-cv-2021-Orl-41KRS, 2018 U.S. Dist. LEXIS 185385, at *3 n.3 (M.D. Fla. Oct. 1, 2018) (citing 20 C.F.R. § 404.1594(b)(7)).

had the following medically determinable impairments: Lumbar degenerative disc disease status post laminectomy[11] and migraines." (Tr. 20).

Here too, at step one of the eight-step evaluation, the ALJ found through the date of decision that Plaintiff had not engaged in substantial gainful activity. (Tr. 20-21). From the medical evidence since November 9, 2021, to current, the ALJ determined that Plaintiff's medically determinable impairments are lumbar degenerative disc disease with laminectomy syndrome status post revision of laminectomy, peripheral neuropathy, obesity, and migraine. (Tr. 21).

At step two, the ALJ determined that since November 9, 2021, Plaintiff "has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526)." (Tr. 21).

At step three, the ALJ found that Plaintiff achieved medical improvement on November 9, 2021. (Tr. 23).

At step four, the ALJ found that "[s]ince November 9, 2021, the impairment present at the time of the CPD had decreased in medical severity to the point where the claimant has had the residual functional capacity to perform sedentary work." (Tr. 24). Thus, the ALJ found that Plaintiff's "medical improvement is related to the ability to work because it resulted in an increase in [Plaintiff's] residual

---

[11] "Laminectomy is surgery to remove the back part of a spinal bone, also called a vertebra." *Laminectomy*, MAYO CLINIC (Aug. 21, 2026), https://www.mayoclinic.org/tests-procedures/laminectomy/about/pac-20394533.

functional capacity." (Tr. 28). Accordingly, the ALJ proceeded to step six.[12]

As Plaintiff points out, (Doc. 17 at 4), and Commissioner neglected to address, the ALJ "did not make an explicit determination at step six whether all the claimant's current impairments in combination are severe." (Doc. 17). To the extent that this argument has bearing on this Court's review, any argument by Plaintiff is deemed waived. *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *see also Access Now, Inc. v. SW Airlines*, Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

At step seven, the ALJ assessed Plaintiff's RFC and found that Plaintiff had "no past relevant work." (Tr. 24-28).

At step eight, the final step, the ALJ considered Plaintiff's age (claimant was "34 years old on November 9, 2021"), education ("claimant has at least a high school education"), work experience ("claimant does not have past relevant work"), RFC, and the ALJ found that "based on the impairments since November 9, 2021, the claimant has been able to perform a significant number of jobs in the national economy." (Tr. 28-29). In support, the vocational expert[13] testified that given

---

[12] By finding medical improvement, an ALJ then proceeds to the sixth step and skips step five. 20 C.F.R. § 404.1594(f)(4).

[13] "At the hearings and appeals levels of Social Security proceedings, Vocational Experts are vocational professionals who provide impartial expert opinions either by testifying or

Plaintiff's age, education, work experience, RFC, and impairments since the found date of improvement, Plaintiff could perform:

> • Lens inserter, DOT[14]# 713.687-026, Sedentary, SVP 2, 27,000 jobs nationally
> • Lens block gager, DOT# 716.687-030, Sedentary, SVP 2, 23,000 jobs nationally
> • Stone setter, DOT# 735.687-034, Sedentary, SVP 2, 12,000 jobs nationally.

(Tr. 29). Ultimately, the ALJ found that Plaintiff was not disabled, her "disability ended on November 9, 2021, and the claimant has not become disabled again since" November 9, 2021. (Tr. 29-30).

## 2. Analysis

### A. Standard of review

"In reviewing the denial of Social Security disability benefits, . . . 'the district court must review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record.'" *Washington*, 906 F.3d at 1358 (citation omitted). To be sure, "Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [their] position; [the claimant] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. SSA*, 706 F. App'x 595, 604 (11th Cir. 2017) (citation omitted). "Substantial evidence means 'more than a mere

---

by providing written responses to interrogatories." *Washington*, 906 F.3d at 1357 n.1 (citations omitted).

[14] "The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Id.* at n.2 (citations omitted).

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Washington*, 906 F.3d at 1358 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, "the ALJ's decision stands if its decision was based on 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Flowers v. SSA*, 97 F.4th 1300, 1309 (11th Cir. 2024) (citation omitted). The substantial evidence threshold is a low evidentiary bar, and courts generally defer to the ALJ's factual findings because the ALJ "has seen the hearing up close." *Id.* (quoting *Biestek v. SSA*, 587 U.S. 97, 108 (2019)).

Even if a reviewing Court "would have reached a different result and even if a preponderance of the evidence weighs against the Commissioner's decision," the court must affirm the ALJ's decision, if the "ALJ's decision clears the low evidentiary bar" of substantial evidence. *Id.* (citation omitted). Put simply, although a "presumption of validity attaches" to the ALJ's factual findings, the district court must review the ALJ's decision to "determine the reasonableness of the secretary's factual findings." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citations omitted). "No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Id.* (citation omitted).

Moreover, "section 405(g) of Title 42 also prescribes that 'the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.'" *Washington*, 906 F.3d at 1358 (cleaned up)

(quoting 42 U.S.C. § 405(g)). So, again, "even if a Court finds that the evidence preponderates against the Secretary's decision, it must affirm if the decision is supported by substantial evidence." *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (citation omitted). In sum, a reviewing Court "must decide whether on the transcript record it would have been possible for a reasonable jury to reach the agency's conclusion." *Washington*, 906 F.3d at 1358 (cleaned up) (quoting *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 366-67 (1998)). A reviewing court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. SSA*, 5 F.4th 1315, 1320 (11th Cir. 2021) (citation omitted).

### B. Issues

Woodard's appeal presents the following issues for review:

1. Whether the ALJ erred in comparing Plaintiff's prior and current medical evidence in determining whether medical improvement occurred in the symptoms, signs, or laboratory findings associated with the Plaintiff's impairments?

2. Whether the ALJ erred in evaluating Plaintiff's claim of mental impairment?

3. Whether the ALJ erred in considering Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms?

4. Whether the ALJ erred in considering the opinion by physical therapist assistant Carlos Pineda and physical therapist Luke Ivers?

(Doc. 17 at 1). The Court takes each in turn.

#### 1. Whether the ALJ erred in comparing Plaintiff's prior and current medical evidence in determining whether medical improvement occurred in the symptoms, signs, or laboratory

**findings associated with the Plaintiff's impairments?**

When a claimant is entitled to and awarded benefits, the Commissioner is required to perform a periodic review to determine whether the claimant's benefits are to continue. 20 C.F.R. § 404.1594(a); *see also Townsend*, 2015 U.S. Dist. LEXIS 21887, at *5 (same). Certainly, "An ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments related to his ability to work, and the claimant is now able to engage in substantial gainful activity." *Klaes*, 499 F. App'x at 896 (citing 42 U.S.C. § 423(f)(1) and 20 C.F.R. § 404.1594(a)). So, in determining whether to terminate benefits, the ALJ must adhere to an eight-step review.[15]

Accordingly, "At step three, the ALJ must determine whether Plaintiff had 'medical improvement,' which is defined as any decrease in the medical severity of a plaintiff's impairments, which were present at the most recent favorable decision" that the claimant was disabled. *Bush v. SSA*, No. 8:23-cv-1488-DNF, 2024 U.S. Dist. LEXIS 162223, at *9 (M.D. Fla. Sep. 10, 2024) (quoting 20 C.F.R. § 404.1594(b)(1)). "A finding that there has been a decrease in medical severity 'must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Klaes*, 499 F. App'x at 896 (quoting 20 C.F.R. § 404.1594(b)(1)). Notably, under step three, "The ALJ must 'actually compare' the previous and current medical evidence to show

---

[15] *See supra* Section 1(C) (outlining the eight-step process an ALJ uses when determining a cessation of disability benefits).

that an improvement occurred." *Id.* (quoting *Freeman v. SSA*, 739 F.2d 565, 566 (11th Cir. 1984)). Thus, "If the ALJ fails to evaluate the prior medical evidence and make such a comparison," the ALJ's decision must be reversed and remanded "for application of the proper legal standard." *See id.* at 895-97 (quoting *Vaughn v. SSA*, 727 F.2d 1040, 1043 (11th Cir. 1984) (holding that if an ALJ fails to evaluate—by actually comparing—the prior medical evidence with the current medical evidence, the case must be reversed and remanded "for application of the proper legal standard")).

To begin, the Court notes that Plaintiff recites some—but not all—of the ALJ's discussion relevant to the ALJ's step three analysis. *Compare* (Doc. 17 at 6), *with* (Tr. 23-24). The Court adds that the findings relied on by the examiner to reach the CPD were not particularly voluminous. *See* (Tr. 83-91). Even so, the ALJ properly compared the evidence supporting the December 14, 2017, favorable decision with Plaintiff's current medical evidence, (Tr. 20).

The ALJ stated the findings of the CPD, specifically that "the claimant had a history of a back injury and was status post revision of laminectomy surgery[,] [and that a] Lumbar MRI showed bilateral lateral recess stenosis encroaching on the descending L5 nerve roots bilaterally." (Tr. 23; 94). The ALJ noted the CPD finding that the claimant "had paraspinal muscular tenderness and paraspinal atrophy." (Tr. 23; 94). When comparing the CPD findings against the current medical evidence, the ALJ found that "[a] recent MRI of the lumbar spine showed transitional vertebral anatomy with partial sacralization of L5, disc bulging and

mild multilevel . . . degenerative disc disease." (Tr. 23; 25-26). Here, the Commissioner characterizes this finding as "improvement over L5 nerve root encroachment (Doc. 22 at 9)," a characterization that Plaintiff neither contested via a reply brief nor asserted as deterioration. (Doc. 4 at 2).

Moreover, with respect to the CPD decision, the ALJ stated that the claimant's "range of motion and motor strength was reduced" and that the claimant "express[ed] constant back spasms and [that she] could not sit or stand for prolonged periods." (Tr. 23; 94). When comparing the CPD findings against the current medical evidence, the ALJ compared these findings in parallel manner. When reviewing the current medical evidence, the ALJ found that the claimant's "[r]ecent physical examinations noted she has limited range of motion in the lumbar spine and reduced sensation and [sic] both her lower extremities," but that claimant's "stress and gait [were] normal," "No atrophy was noted," and "her strength was normal." (Tr. 23-25; 94). The ALJ also noted that there was "no documentation of any recent emergency room visits or hospitalizations for any physical condition." (Tr. 23-24). Although the ALJ did not include dates at every turn within his step three analysis, the analysis turns on actual comparison of the relevant evidence not the specific citation of dates. *See Klaes*, 499 Fed. Appx. at 896 (emphasis added) (citing *Freeman*, 739 F.2d at 566 (stating that the "ALJ must 'actually compare' the *previous and current medical evidence* to show that an improvement occurred")).

Plaintiff did not point to any evidence relied upon for the CPD that the ALJ

failed to actually compare with the claimant's current medical evidence. Plaintiff only provides the Court with a snapshot of the ALJ's step three findings, a myriad of case briefs, and no attempt at linking this case's analysis to the cases cited by Plaintiff. *See* (Doc. 17 at 6-9). What Plaintiff really seeks is for this Court to reweigh the evidence which this Court cannot do. *Flowers*, 97 F.4th at 1309 ("Thus, even if we would have reached a different result and even if a preponderance of the evidence weighs against the Commissioner's decision, we must still affirm if the ALJ's decision clears the low [substantial evidence] bar."). What's more, with respect to this issue, the ALJ's current decision is markedly more descriptive than the ALJ's decision dated July 26, 2023, which was remanded by the Appeals Council for consideration of what Plaintiff again asserts as ALJ error. *Compare* (Tr. 135-38), *with* (Tr. 23-28).

Accordingly, the ALJ proceeded with the requirements of 20 C.F.R. § 404.1594 correctly finding Plaintiff's medical improvement was related to her ability to work and proceeding with the sequential process outlined in 20 C.F.R. § 404.1594(f); thus, on this issue, the ALJ did not err.

**2. Whether the ALJ erred in evaluating Plaintiff's claim of mental impairment?**

As the threshold argument, Plaintiff argues that the ALJ failed to find that Plaintiff has a medically determinable mental impairment. (Doc. 17 at 9). As this issue is readily resolvable without recitation of the entirety of the framework used in evaluating a mental impairment in conjunction with an RFC assessment, the

Court foregoes such a recitation and instead states the relevant jurisprudence.

When a claimant's benefits are found to be terminated, the relevant period for considering a claimant's new and/or current impairments is the cessation date "through the date of the adjudicator(s)'s final determination or decision." 2013 SSR LEXIS 3, at *5-6; *Langford v. SSA*, No. 8:18-cv-2812-T-MAP, 2020 U.S. Dist. LEXIS 8397, at *10 n.3 (M.D. Fla. Jan. 17, 2020) (same).

Here, the claimant was determined to be no longer disabled as of November 9, 2021. (Tr. 20). The ALJ entered his final decision regarding claimant's cessation of benefits on August 2, 2024. (Tr. 30). Thus, as Commissioner states, (Doc. 22 at 9-10), and the Court agrees, the relevant period for reviewing new impairments in this case is November 9, 2021, to August 2, 2024. To that end, Plaintiff only cites three occasions in which the claimant was diagnosed with mental impairments — anxiety and depression. (Doc. 17 at 10). Claimant's visit with a medical health profession on February 22, 2018; May 17, 2018; and February 6, 2019. (Tr. 1297-98, 1305-06, 1303-04). None of the visits occurred during the period under review. So, as Commissioner's brief correctly highlights, "there does not appear to be any diagnosis or treatment of mental impairments during the period under review." (Doc. 22 at 10).

Plaintiff also argues that the ALJ failed to develop the record and order a psychological consultative examination, which hindered that ALJ's ability to find that Plaintiff has a mental impairment. (Doc. 17 at 10-13). But, as Plaintiff correctly concedes, "the ALJ is not obliged to order a consultative examination when the

record contains sufficient evidence to support [an ALJ's] determination." *Ybarra v. SSA*, 658 F. App'x 538, 543 (11th Cir. 2016); *see also* (Doc. 17 at 13) (collecting cases stating the same). Plaintiff does not cite diagnoses or treatment of mental impairments during the period under review. It's quite the opposite. Defendant shoulders the task and advises the Court of mental health screening that Plaintiff underwent during the review period; all of which proves unfavorable for Plaintiff's argument as the screenings did not result in a mental impairment diagnosis. (Doc. 22 at 10); *see, e.g.*, (Tr. 110-19, 1377, 1387, 1390, 1405, 1409, 1481, 1725-1748, 1800, 1822, 1849, 1890).

Relatedly, Plaintiff argues that she presented a colorable claim of mental impairment to the ALJ, which imposed a duty on the "ALJ to complete a [Psychiatric Review Technique Form (PRTF)] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions." (Doc. 17 at 13-15); *see also Moore v. SSA*, 405 F.3d 1208, 1214 (11th Cir. 2005). Still, given the previous discussion, Plaintiff's argument here is achromatic. What's more, the Court notes that Plaintiff did not even complain of a mental impairment during the hearing underlying the CPD, (Tr. 83-84, 353), nor did the questionnaire underlying one of her CDR interviews, (Tr. 408, 417). Too, Plaintiff did not check the applicable box on her CDR Function Report that would indicate she has a mental limitation. (Tr. 442).

The Court easily concludes that Plaintiff's assertion that the ALJ was to "conduct the special technique for evaluating the severity of mental impairments

under 20 CFR § 404.1520a" is also hueless because the special technique is reserved for evaluating actual colorable assertions regarding mental impairments. *See Battle v. SSA*, 243 F. App'x 514, 519 (11th Cir. 2007) (finding that 20 C.F.R. § 404.1520a requires the application of the "special procedure" when considering the severity of the mental impairments). Put succinctly, Plaintiff failed to show that evidence of a mental impairment during the period under review, (Tr. 27); thus, the special technique was not required. And a consultative examination was not required because a consultative examination is only necessary when "information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources." *Doughty v. SSA*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citing 20 C.F.R. § 404.1519a(b)). The ALJ's decision regarding Plaintiff's mental impairment (Tr. 27) is supported by substantial evidence. Thus, on this issue, the ALJ did not err.

**3. Whether the ALJ erred in considering Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms?**

In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which a claimant's "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). And "once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater*, 67 F.3d

1553, 1561 (11th Cir. 1995) (citing 20 C.F.R. § 404.1529). That said, this Circuit employs a "three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. SSA*, 921 F.2d 1221, 1223 (11th Cir. 1991).[16]

The three-part pain standard requires:

> (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* (emphasis added) (citation omitted). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Id.* (citation omitted). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.* (citation omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. Notably, "this circuit does not require an explicit finding as to credibility," especially if the implication is made "obvious to the reviewing court." *Id.*

Here, the ALJ found that the "claimant's medically determinable impairment could have reasonably been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity,

[16] *See generally* 20 C.F.R. § 404.1529(c)(3)(i)-(vii) (listing the factors an ALJ is to consider when analyzing such as pain).

persistence and limiting effects of [her] symptoms [were] not entirely consistent with the objective medical and other evidence." (Tr. 26). Plaintiff cites *Mai v. SSA*, No. 8:07-CV-288-T-TGW, 2008 LX 57136 (M.D. Fla. Feb. 11, 2008), and *Russell v. SSA*, 331 F. App'x 678 (11th Cir. 2009), for the proposition that the ALJ was required to explicitly mention and discredit her statements regarding her symptoms and the State agency consultant's opinion, (Doc. 15-17). While the proposition holds, its application here does not.

The ALJ explicitly discussed what Plaintiff asserts that the ALJ did not. Plaintiff alleges that "[i]n failing to consider the State agency consultant's opinions at the CDR Hearing level regarding the intensity, persistence, and functionally limiting effects of the symptoms being substantiated by the objective medical evidence alone, the ALJ erred." (Doc. 17 at 17). To that end, the State agency consultant's opinion relied on, among other things, a consultative physical examination by Michael Rosenberg, MD, (Tr. 122), and several examinations spanning throughout 2022, (Tr. 122). Dr. Rosenberg found that the claimant "appeared to be in no acute distress," showed normal gait, "used no assistive devices," showed normal strength and no evident muscle atrophy. (Tr. 24, 1393-99). That said, this issue requires little analysis because the ALJ went beyond considering only the State agency consultant's opinion, the ALJ considered the exact evidence underlying the consultant's opinion in conjunction with the longitudinal record. (Tr. 24-25, 27).

The ALJ noted several instances in which Plaintiff underwent and seemingly

relied on *conservative* treatment. (Tr. 25-28); *see also* (Tr. 1592-1892) (noting multiple statements of continuing *conservative* treatment). The ALJ noted that Plaintiff provided no new "documentation of any recent emergency room visits or hospitalizations for any physical condition" following the Disability Hearing Officer's 2022 Decision. (Tr. 25). Moreover, the ALJ highlighted other evidence following the consultant's decision. On January 19, 2024, the claimant underwent a physical exam that revealed "no gross motor deficits" and that "[h]er musculoskeletal range of motion general and cervical was normal." (Tr. 26, 1831-36). Whereas Plaintiff challenges the ALJ's decision for failing to lend credibility to her statements and the State agency consultant's opinion, "The credibility determination does not need to cite particular phrases or formulations." *Sampson v. SSA*, 694 F. App'x 727, 740 (11th Cir. 2017) (citation omitted). To be sure, no longer is an ALJ required to lend deferential weight to one opinion over another. *See Harner v. SSA*, 38 F.4th 892, 894 (11th Cir. 2022) ("[A]dministrative law judges [are not] to give a treating physician's opinion . . . deference and instead [the ALJ is] to weigh medical opinions based on their persuasiveness.").

Too, the ALJ did not cast a broad rejection; this allowed the Court to conclude that the ALJ considered Plaintiff's medical condition as a whole. *Sampson*, 694 F. App'x at 740 (citation omitted). The reviewing court again "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter*, 5 F.4th at 1320 (citation omitted). That said, the ALJ's decision to not specifically name the consultant's opinion is harmless because the

decision that the ALJ reached is substantially supported by evidence that the ALJ cited. *Whitten v. SSA*, 778 F. App'x 791, 793 (11th Cir. 2019) (citation omitted) (finding that harmless error does not require reversal or remand); *see, e.g.*, *Sarli v. SSA*, 817 F. App'x 916, 919 (11th Cir. 2020) (citation omitted) ("[B]ecause the state agency psychological consultant opinions were consistent with the ALJ's ultimate determination of Sarli's residual functioning capacity, the ALJ committed harmless error by failing to state the weight it gave to those opinions, as that failure would not have affected the ultimate outcome of ALJ's decision."). Accordingly, the ALJ's decision regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms (Doc. 26) is supported by substantial evidence. Thus, on this issue, the ALJ did not err.

**4. Whether the ALJ erred in considering the opinion by physical therapist assistant Carlos Pineda and physical therapist Luke Ivers?**

For claims filed on or after March 2017—like this one—an ALJ must use the same set of factors to assess all medical opinions. *See generally* 20 C.F.R. § 404.1520c (discussing how claims are evaluated). No longer is an ALJ to afford deferential weight to the opinions of any particular source such as a treating physician. *Harner*, 38 F.4th at 894 ("[A]dministrative law judges [are not] to give a treating physician's opinion . . . deference and instead [the ALJ is] to weigh medical opinions based on their persuasiveness."). As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, frequency of

examinations, purpose of the treating relationship, extent of the treatment relationship, and manner of the examining relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim that supports or contradicts the medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors in evaluating medical opinions or findings from a medical source. *Id.* § 404.1520c(b)(2). Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical" opinion. *Id.* § 404.1520c(c)(1). Consistency assesses whether "the evidence from other medical sources and nonmedical sources" are consistent with the medical opinion proffered in the claim. *Id.* § 404.1520c(c)(2). "While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors." *Malak v. O'Malley*, No. 8:23-cv-667-SPF, 2024 U.S. Dist. LEXIS 50991, at *19 (M.D. Fla. Mar. 22, 2024) (citing 20 C.F.R. § 404.1520c(b)(2)). "Although the regulations require the ALJ to articulate consideration of the supportability and consistency factors when evaluating a medical opinion from a medical source, they do not require the ALJ to use any specific language to articulate consideration of the factors." *Hickman v. SSA*, No. 6:22-cv-2267-PGB-LHP, 2023 U.S. Dist. LEXIS 232829, at *13 (M.D. Fla. Dec. 18, 2023) (citations omitted). To be sure, "As long as the evaluation addresses the substance of the factors, the ALJ meets the articulation requirement." *Id.* (citations omitted). Accordingly, persuasiveness—

not weight—is the barometer when assessing a medical opinion.

Here, Plaintiff simply argues that the ALJ failed to properly assess the supportability of the opinions of physical therapy assistant Pineda and physical therapist Ivers because the ALJ stated that they were an unacceptable medical source. (Doc. 17 at 17-22). This is a quintessential the-ALJ-should-have-agreed-with-my-evidence argument. But reweighing the evidence is not a task for this Court. *Garcia v. SSA*, No. 2:19-cv-877-FtM-MRM, 2021 U.S. Dist. LEXIS 51021, at *32 (M.D. Fla. Mar. 18, 2021).

The issue here is simple to resolve. The therapists offered opinions that the ALJ found simply unpersuasive. (Tr. 28). To be sure, the ALJ considered, but dismissed their opinions. *See, e.g.*, *Zola v. SSA*, No. 2:21-cv-196-DNF, 2022 U.S. Dist. LEXIS 136427 (M.D. Fla. Aug. 1, 2022) (finding that the ALJ's decision was supported by substantial evidence when the ALJ found that the opinions of various medical professionals were unpersuasive and inconsistent with the record evidence). So, notwithstanding the ALJ's statement that Pineda's and Ivers's opinions were from "an unacceptable medical source," the ALJ also detailed his finding that their opinion was "neither supported nor consistent with the record as a whole." (Tr. 28).

The therapists (among other things) said that the "claimant was capable of light physically demanding work and could lift up to 20 pounds occasionally; sit for two hours and stand and walk less than two hours; must take frequent breaks; and has no limitations in reaching, handling, or fingering." (Tr. 28, 1668). To that

end, the ALJ found that "the findings of the objective medical evidence and imaging studies . . . found no acute compression deformity in the lumbar spine; only slight retrolisthesis of L4 on L5; mild residual annular disc bulging; and no surgical recommendations," and that the imaging "did not reveal significant changes compared to previous studies." (Tr. 28, 965, 1612, 1790-94). The ALJ also noted that the claimant was "advised to continue with *conservative* treatment." (Tr. 28, 965, 1612, 1790-94) (emphasis added).

Upon review, the ALJ simply found the therapist opinions lacking and unsupported when "scrutinizing their conclusions given the objective medical evidence." *Lemons v. Comm'r, SSA*, No. 22-10198, 2022 U.S. App. LEXIS 27129, at *5 (11th Cir. Sep. 28, 2022). The ALJ noted that the claimant's consultative evaluation with the therapists:

> [R]evealed the claimant had very high functioning activities of daily living, where she indicated she did not need extra help at home, cooked multiple times a week, cleaned, did laundry, and shopped. . . . [Also] [s]he reported doing childcare seven days a week, taking care of her personal needs, and socializing with friends. . . . [Additionally, that] [h]er gait was normal, [and that] she did not require assistance getting on and off exam table and was able to rise from a chair without difficulty.

(Tr. 28, 1393-96). The ALJ outlined his findings regarding Pineda and Ivers—finding that he was "not persuaded by the functional capacity evaluation completed by the Therapists on December 21, 2022." (Tr. 28). Again, "an ALJ assesses the persuasiveness of a medical source's opinion." *Zola*, 2022 U.S. Dist. LEXIS 136427, at *7. Although, Plaintiff cites many findings from the therapists, (Doc. 17-

19), "under the substantial evidence standard, an ALJ need not refer to every piece of contrary evidence in its decision" in finding a source's opinion inconsistent with the ALJ's. *Lemons*, 2022 U.S. App. LEXIS 27129, at *6 (citation omitted). To be sure, "even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Ellison v. SSA*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citation omitted).

What's more, with respect to this issue, the ALJ's current decision is markedly more descriptive than the ALJ's decision dated July 26, 2023, which was remanded by the Appeals Council for consideration of what Plaintiff asserts as ALJ error. *Compare* (Tr. 135-38) (failing to mention the opinion of the therapists), *with* (Tr. 28) (outlining the unpersuasiveness of the therapists' opinion). Accordingly, the ALJ properly assessed the supportability of the opinions from Pineda and Ivers. The ALJ's decision is supported by substantial evidence, and as such, the ALJ did not err with respect to this issue. *See, e.g.*, *McKenzie v. SSA*, No. 2:22-cv-763-KCD, 2023 U.S. Dist. LEXIS 176676, at *20 (M.D. Fla. Oct. 2, 2023) (find that an ALJ did err in the ALJ's supportability determination when the ALJ discussed findings in the record inconsistent with a physical therapist's).

### 3. Conclusion

Upon consideration of Plaintiff Woodard's opening brief (Doc. 17), Defendant Commissioner's brief in opposition (Doc. 22), and the administrative record (Doc. 13)—for the reasons discussed above—this Court finds that the ALJ's decision pertaining to Plaintiff's disability claim is supported by substantial

evidence. As a result, the Court finds that the Commissioner's decision is affirmed.

**ORDERED:**

1. Defendant Commissioner's decision is **AFFIRMED.**

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and scheduled events, and close the case.

In Fort Myers, Florida, on September 21, 2026.

Kevin R. Huguelet
United States Magistrate Judge